UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRANDON DIEMEL and
BRANDON DIEMEL LIVESTOCK, LLC,

        Plaintiffs,

       v.                                                Case No. 21-C-931

MEGHAN TOLLEY, as personal representative
of the estate of Samuel Ryan Tolley,

        Defendant.

## DECISION AND ORDER DENYING DEFENDANT'S MOTION
## TO DISMISS FOR LACK OF JURISDICTION

        Plaintiffs Brandon Diemel and Brandon Diemel Livestock, LLC (collectively Diemel), filed this lawsuit against Defendant Meghan Tolley, as personal representative of the estate of Samuel Ryan Tolley, asserting eight state law claims for relief arising out of Tolley's alleged failure to remit payment for shipments of livestock. The case arises under the Court's diversity jurisdiction, 28 U.S.C. § 1332, and is before the Court on Tolley's motion to dismiss for lack of jurisdiction. In the course of briefing on the motion to dismiss for lack of personal jurisdiction, Tolley also raised the issue of whether Diemel's tort claims are barred by the economic loss doctrine. Although the Court requested supplemental briefing on the application of the economic loss doctrine, it now concludes that it need not address that issue in order to decide Tolley's motion. For the reasons set forth below, Tolley's motion to dismiss for lack of personal jurisdiction will be denied.

## ALLEGATIONS IN THE COMPLAINT

Brandon Diemel is a Wisconsin resident and the sole member and proprietor of Brandon Diemel Livestock, LLC, which is located in Pulaski, a village just west of Green Bay, Wisconsin. Compl. ¶ 1, Dkt. No. 1. Brandon Diemel Livestock, LLC, is the successor in interest to Diemel Livestock, LLC, which was operated by Brandon's brothers Nick and Justin, until they were murdered by the owner of a Missouri farm where their bodies were eventually recovered. Diemel Decl. ¶¶ 3–9, Dkt. No. 9-1.

Prior to his passing, Samuel Ryan Tolley (Mr. Tolley) was an Indiana resident who ran a livestock-shipping business in Butler, Indiana. Compl. ¶ 3. Mr. Tolley was a customer of Diemel Livestock, LLC, for many years. Diemel Decl. ¶ 6. He contacted Brandon Diemel after the murder of his brothers and offered to continue the business he had conducted with the family. *Id.* at ¶¶ 16–20.

According to the complaint, Mr. Tolley purchased livestock from Brandon Diemel Livestock on multiple occasions, typically by calling Brandon Diemel and requesting that a certain number of livestock be shipped directly to his place of business. Compl. ¶¶ 25–27. After the parties agreed on pricing, Diemel would prepare the commercial lot of livestock, and the parties would arrange for the shipment to Mr. Tolley. *Id.* at ¶ 28; Diemel Decl. ¶ 27. Upon receipt of the livestock, Mr. Tolley and the shipping company were to inspect the livestock and notify Diemel of any non-conforming livestock that had either died or been injured in transit, with the remainder being accepted. Compl. ¶¶ 29–31. Once accepted, Diemel would revise the invoices to conform with the accepted livestock and would send the revised invoices to Mr. Tolley, who would typically wire transfer the corresponding amount owed to Brandon Diemel Livestock. *Id.* at ¶¶ 32–33. Invoices attached to the complaint show that Mr. Tolley ordered cattle from Brandon Diemel

Livestock on 31 separate occasions between July 2019 to early September 2019 totaling $817,715.00. Dkt. No. 1-3 at 2. Beginning in August 2019, however, Mr. Tolley's wire transfers were insufficient to cover the revised amounts. Compl. ¶¶ 37–39. After reviewing the invoices and Tolley's wire transfers, Diemel concluded that Mr. Tolley was in arrears in the amount of $298,270.00. *Id.* at ¶ 41; *see also* Dkt. No. 1-5.

Diemel inquired into Mr. Tolley's intention to pay the outstanding amount on several occasions via text message. *See* Dkt. No. 1-6. Sometime in December 2020, Diemel asked Mr. Tolley if he planned on sending payment via wire transfer, to which Mr. Tolley responded that he would and that he was "tuning the bank now trying to get a loan." *Id.* at 2. When asked again sometime in January, Mr. Tolley said that he was waiting on his bank and did not know how long it would take but that he was working hard to make something happen. *Id.* at 4. On January 6, 2020, Mr. Tolley told Diemel that he would "wire [him] a thousand a week until something comes [through]." *Id.* at 5. Throughout February, March, and April 2020, Mr. Tolley continued to tell Diemel that he was working on things with his bank and repeatedly told Diemel that he was working hard to get things resolved. *Id.* at 14–19.

Then, on May 18, 2020, Mr. Tolley changed tack and told Diemel that he was "current on all bills" and that any outstanding bill was "due to not the right cattle and deads." *Id.* at 23. In other words, Mr. Tolley asserted that any outstanding bill was due to livestock that were non-conforming. Compl. ¶ 51. Mr. Tolley told Diemel that he "sent [the] wrong cattle and weak cattle and cattle of the wrong breed," and that Mr. Tolley was not responsible for Diemel's error in that regard. Dkt. No. 1-6 at 26. On June 18, 2021, Mr. Tolley passed away unexpectedly. Tolley Decl. ¶ 5, Dkt. No. 8-1. To date, Diemel has not received payment for the amounts allegedly owed. Compl. ¶ 54.

3

Diemel thereafter filed this action asserting eight state law claims for relief. The claims asserted by Diemel include breach of contract, unjust enrichment, promissory estoppel, fraudulent misrepresentation, strict liability misrepresentation, negligent misrepresentation, conversion, and civil theft.

## ANALYSIS

Rule 12(b)(2) of the Federal Rules of Civil Procedure governs motions to dismiss for lack of personal jurisdiction. Though the plaintiff has the burden of proving personal jurisdiction, the burden is not a heavy one. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799–800 (7th Cir. 2014). "The plaintiff need not include facts alleging personal jurisdiction in the complaint, but 'once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). In deciding whether personal jurisdiction exists, the court may rely on the complaint, affidavits, deposition testimony, exhibits, or other evidence in the record. *See Purdue*, 338 F.3d at 782. The court must draw all inferences from the record in the plaintiff's favor. *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). "When the district court bases its determination solely on written materials and not an evidentiary hearing, plaintiffs must only make a *prima facie* showing of personal jurisdiction over the defendants to survive a motion to dismiss." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019).

"A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue*, 338 F.3d at 779 (citation omitted). Under Wisconsin law, a court must employ a two-step inquiry to determine

whether personal jurisdiction may be exercised over a nonresident defendant. First, the court determines whether the defendant meets any of the criteria for personal jurisdiction under Wisconsin's long-arm statute, Wis. Stat. § 801.05. *Kopke v. A. Hartrodt, S.R.L.*, 2001 WI 99, ¶ 8, 245 Wis. 2d 396, 629 N.W.2d 662. If the statutory requirements are satisfied, the court considers whether the exercise of jurisdiction comports with the requirements of due process. *Id.* The plaintiff bears "the minimal burden of establishing a prima facie threshold showing" that the statutory and constitutional requirements are satisfied. *Id.* (citation omitted).

The parties do not dispute that Wisconsin's long-arm statute, by its terms, extends personal jurisdiction over Tolley. *See* Dkt. No. 8 at 2. Section 801.05(5)(d) of the Wisconsin Statutes provides that the state's courts have jurisdiction over the defendant in any action which "relates to goods, documents of title, or other things of value shipped from this state by the plaintiff to the defendant on the defendant's order or direction." Diemel's action against Tolley arises out of Diemel's shipment of goods (cattle) from this state to Mr. Tolley on Mr. Tolley's order or direction. And pursuant to § 801.05(12), the personal representative for the estate of a person who is deceased stands in his or her shoes. Thus, the only issue is whether exercising personal jurisdiction over Tolley would comport with the Due Process Clause of the Fourteenth Amendment.

The Due Process Clause of the Fourteenth Amendment allows a court to exercise personal jurisdiction over an out-of-state defendant only if that defendant has "minimum contacts" with the forum State, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The concept of minimum contacts protects a defendant from having to litigate in a distant forum and allows the defendant to reasonably anticipate where he may be haled into court. *See World-Wide Volkswagen*

5

*Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The primary focus of the personal jurisdiction analysis "is the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Court of Cal., San. Fran. Cty.*, 137 S. Ct. 1773, 1797 (2017). Personal jurisdiction may either be general or specific, "depending on the extent of the defendant's contacts with the forum state." *uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010); *see also Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984).

Specific jurisdiction is proper only if the "defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024 (2021) (citation omitted). Specific jurisdiction is appropriate when "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (internal quotation marks and citation omitted). The "mere fact that defendant's conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Advanced Tactical*, 751 F.3d at 801 (alterations and citation omitted). Instead, the defendant's conduct and connection with the forum state must be substantial enough to make it reasonable for the defendant to anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). "[T]he relation between the defendant and the forum must arise out of the contacts that the defendant himself creates with the forum." *Advanced Tactical*, 751 F.3d at 801 (internal quotation marks and citation omitted).

6

With respect to contract disputes, such as the one here, "contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum." *Purdue*, 338 F.3d at 781 (citing *Burger King*, 471 U.S. at 478). Instead, the Court is to conduct a "context-sensitive analysis of the contract, examining 'prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other.'" *Greving*, 743 F.3d at 493 (quoting *Purdue*, 338 F.3d at 781). "So long as a commercial defendant's efforts are purposefully directed toward residents of the forum state, the fact that the defendant hasn't physically entered it does not defeat personal jurisdiction there." *Id.* (citing *Burger King*, 471 U.S. at 476).

Ms. Tolley argues that Mr. Tolley's contacts with Wisconsin, at least as they relate to the contract, are insufficient. She argues that Mr. Tolley (1) never entered Wisconsin; (2) did not care whether the livestock were bred, raised, or shipped in Wisconsin; (3) only conducted business with Diemel for a month-and-a-half, at least as to the invoices in dispute; and (4) entered into discrete contracts that did not entail any continuing obligation for either party upon their completion. Dkt. No. 8 at 6. In support of her position, Tolley cites to *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.*, 597 F.2d 596 (7th Cir. 1979). In that case, a West Virginia construction company contracted with a Wisconsin corporation to purchase structural assemblies for use in constructing a dam and reservoir. *Id.* at 598. When it received the goods, the West Virginia corporation withheld a portion of the purchase price on the ground that the goods were defective in certain respects. *Id.* The Wisconsin corporation brought suit in Wisconsin, claiming that personal jurisdiction existed because the West Virginia corporation knew the manufacturing of the goods would take place in Wisconsin and had contact with the Wisconsin corporation via mail and telephone. *Id.* at 600. The Seventh Circuit concluded that the district court lacked

7

jurisdiction because the contacts with Wisconsin stemmed from the unilateral acts of the Wisconsin corporation, i.e., the Wisconsin corporation solicited the business and chose to manufacture the assemblies in Wisconsin. *Id.* at 603.

The Seventh Circuit has observed that, while the *Lakeside* decision has been on the receiving end of much distinguishing analysis and criticism, the decision has never been overruled. *See Greving*, 743 F.3d at 494. The court has since used *Lakeside* as "something of a borderline for a no-jurisdiction finding:" when a "defendant's contacts with the forum state have been as—if not more—limited than those of the defendant in *Lakeside*, [the] court has denied personal jurisdiction." *Id.* (quoting *Madison Consulting Grp. v. State of South Carolina*, 752 F.2d 1193, 1200 (7th Cir. 1985)).

Resolving all factual disputes in favor of Diemel, as the Court is required to do, *id.* at 491, Mr. Tolley's contacts may be summarized as follows: (1) Mr. Tolley solicited Diemel's business by contacting Brandon Diemel via phone in July 2019; (2) Mr. Tolley was aware that Diemel was located in Wisconsin; (3) Mr. Tolley and Diemel conversed on a near daily basis, with Mr. Tolley frequently initiating the contact; (4) Mr. Tolley placed numerous orders with Diemel for livestock and arranged for trucks to arrive at Diemel's farm to transport the purchased livestock, with at least two shipments delivered directly to Mr. Tolley and the remainder to Mr. Tolley's clients; and (5) Mr. Tolley had conducted business for years with Brandon Diemel Livestock's predecessor. Diemel Decl. ¶¶ 16–27. Based on these facts, the Court concludes that Mr. Tolley's contacts were not random, fortuitous, or attenuated, such that exercising personal jurisdiction over Tolley would run afoul of the Fourteenth Amendment. *Burger King*, 471 U.S. at 475.

Even though Mr. Tolley never entered Wisconsin with respect to his dealings with Diemel and all communications or negotiations were conducted remotely, Tolley Decl. ¶¶ 13–18, it is

8

well-established that personal jurisdiction may not be evaded merely because the defendant has not physically entered the forum state. *Burger King*, 471 U.S. at 476. Diemel's assertion that Mr. Tolley reached out to him to solicit his business is a relevant factor that the Court is to consider and that distinguishes this case from *Lakeside*. As the Seventh Circuit has recognized, "[t]he question of which party initiated or solicited a business transaction has long been considered pertinent to the constitutional propriety of personal jurisdiction in a suit arising out of the transaction." *Madison*, 752 F.2d at 1202. District courts that have addressed this issue have relied on the non-forum-state defendant's "solicitation of the plaintiff as a factor supporting their decision to assert personal jurisdiction." *Id.*; *see also Shared Med. Equip. Grp., LLC v. Simi Valley Hosp. & Healthcare Servs.*, 3 F. Supp. 3d 735, 743 (W.D. Wis. 2014).

The Seventh Circuit has also held that place of performance is also a relevant consideration in the personal jurisdiction analysis. *Madison*, 752 F.2d at 1204. Tolley asserts that Mr. Tolley did not care where the livestock were bred, raised, or shipped but that does not change the fact that he was aware that Diemel was located in Wisconsin, that the livestock were bred and raised in and shipped from Wisconsin, and that the performance of the contract took place in Wisconsin. Each invoice clearly indicates Diemel's address as being located in Pulaski, Wisconsin. Dkt. No. 1-3.

Tolley further asserts that Diemel and Mr. Tolley entered into discrete contracts that did not entail any continuing obligation for either party upon their completion. But there is no dispute that the duration of the relationship between the parties, as it relates to the invoices in dispute, lasted from the end of July 2019 to the beginning of September 2019, and the relationship with Brandon Diemel Livestock's predecessor was over a period of years. Dkt. No. 1-3 at 2. Diemel and Mr. Tolley engaged in extensive communication throughout that time period. The text messages Diemel submitted demonstrate the near constant contact that Diemel and Mr. Tolley

9

enjoyed. In addition, Diemel asserts that he and Mr. Tolley talked almost daily via phone and that Mr. Tolley often arranged for the transport of the livestock from Diemel's farm to either his own place of business or his clients'. Diemel Decl. ¶ 27. Mr. Tolley's level of interstate communication weighs in favor of exercising jurisdiction. *See PW Stoelting, LLC v. Levine*, No. 16-CV-381, 2016 WL 5921818, *4 (E.D. Wis. Oct. 11, 2016) (considering defendant's numerous contacts with plaintiff via phone and e-mail when deciding whether to exercise specific personal jurisdiction).

These facts, taken together, demonstrate that Mr. Tolley has sufficient minimum contacts with the state of Wisconsin, such that it can be said that he "purposely availed himself of the privilege of conducting business" in the state. *Greving*, 743 F.3d at 492. It is certainly reasonable for Mr. Tolley to "anticipate that he could be haled into court" in Wisconsin on account of these contacts. *Id.*

The Court must nevertheless weigh "whether the exercise of jurisdiction would be compatible with 'fair play and substantial justice.'" *Purdue*, 338 F.3d at 781 (internal citation omitted). In this respect, the Court must evaluate (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the underlying dispute; and (5) the shared interest of the several states in furthering substantive social policies. *Id.* Importantly, when a defendant's minimum contacts are "relatively weak (although existent), these considerations may militate in favor of the exercise of jurisdiction." *Id.*

All five factors support the exercise of jurisdiction. Litigating in this Court will not considerably burden Tolley. Although Tolley is in Indiana, today's world allows for relatively seamless litigation across states. Wisconsin has a strong interest in adjudicating cases where a Wisconsin resident accuses an out-of-state party of breaching their contractual obligations,

especially in the livestock industry, one inherent in the identity of the state. There is certainly a shared interest of the several states to ensure that business transactions are conducted faithfully. Diemel also has an interest in obtaining convenient and effective relief, and courts located in Wisconsin are able to provide that relief. This Court is well-situated to efficiently resolve the dispute, especially given that the contract was performed here, and refiling this case in Indiana would only needlessly delay the litigation further. The Court concludes that exercising personal jurisdiction over Tolley comports with the notions of fair play and substantial justice. In sum, this Court has personal jurisdiction over Tolley via Mr. Tolley's ongoing contacts with a business located in the State of Wisconsin.

## CONCLUSION

For the foregoing reasons, Tolley's motion to dismiss for lack of jurisdiction (Dkt. No. 7) is **DENIED**. The Court has personal jurisdiction over Tolley. The Clerk is directed to set this matter for a Rule 16 scheduling conference to discuss further proceedings.

**SO ORDERED** at Green Bay, Wisconsin this 8th day of June, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge